Filed 3/7/16  In re K.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re K.S. et al., Persons Coming Under the Juvenile Court Law. | C079772 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. 13JVSQ2979101, 13JVSQ2979201, 13JVSQ2979301) |
| Plaintiff and Respondent, | |
| v. | |
| Rosanna S., | |
| Defendant and Appellant. | |

Rosanna S. (mother) appeals from a juvenile court order terminating her parental rights.  (Welf. & Inst. Code, § 366.26.)[1]  Mother contends the juvenile court abused its

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

discretion because she established the existence of the beneficial parental relationship exception to adoption. (§ 366.26, subd. (c)(1)(B)(i).) Disagreeing with her contention, we will affirm the juvenile court order.

BACKGROUND

We provide the facts relevant to the contention on appeal. In July 2013, Shasta County Health and Human Services Agency (the agency) filed a section 300 petition as to minors K.S. (aged four), A.S. (aged three), and R.S., Jr. (aged 11 months), alleging that mother, who had substance abuse and mental health problems, abandoned the minors with a stranger at a homeless persons' camp. R.S., Sr., the minors' father, has been incarcerated since the start of these proceedings. He did not receive reunification services and he is not a party to this appeal.

In September 2013, the juvenile court sustained the allegations of the petition, placed the minors in a foster home, and granted reunification services to mother, with two 2-hour visits per week allowed. From September 2013 through February 2014, mother attended only 27 out of 43 scheduled visits with the minors. However, when mother did visit, the visits mostly went well. But in April 2014, the juvenile court terminated mother's services because she had not done any of the following: attained stability in her way of living, obtained suitable housing, complied with drug testing and treatment, visited the minors consistently, or resolved her mental health problems.

In July 2014, mother's visits were reduced to one hour per month. After that, she did not miss any visits.

In September 2014, the agency's section 366.26 report recommended identifying adoption as the permanent plan for the minors, but continuing the section 366.26 hearing for 180 days to identify an appropriate adoptive family because the minors' current placement was not a prospective adoptive home.

In November 2014, the juvenile court adopted the agency's recommended findings and continued the section 366.26 hearing to May 2015.

2

In April 2015, the agency filed a new section 366.26 report, recommending the ordering of adoption as the permanent plan and the termination of mother's parental rights. According to the report, the minors (now aged six, four, and two) were in a prospective adoptive home which was meeting their needs; they were healthy, happy, and developmentally on target; mother's visits went well: the minors greeted her with hugs and smiles, she remained engaged with the minors and could redirect challenging behavior, she was caring and affectionate with them, and she clearly loved them and told them so at every visit; however, while they loved her and felt loyalty toward her, they had not had a secure and stable relationship with her, and the benefit the relationship furnished them did not outweigh their need for the security and stability adoption could provide.

A May 2015 addendum report noted that the minors had lived in out-of-home care for 22 months. According to the report, although mother still visited regularly and the visits still went well, the minors separated from her at the end of visits with no distress; recently, K.S. was upset that she had to miss school to attend a visit; mother's relationship with the minors was more like that of a friendly visitor than a parent, and the minors did not have a significant attachment to her.

At the section 366.26 hearing on May 20, 2015, mother testified that K.S. and A.S. clung to her, sometimes cried, did not want to let go at the end of visits, and asked when they could come home; R.S., though younger and not talking much yet, also did not want to let go. According to mother, when she reassured the minors that she would be back again, they seemed to find comfort in that, but remained upset. Mother said the last time K.S. held onto her at the end of a visit was in April 2015; she never had to prompt R.S. to give her a hug.

Mother testified that when she had twice-weekly visits, she missed "only a couple" and blamed it on car trouble. When told she missed seven out of nine visits in January 2014, she did not believe that number.

3

According to mother, during visits she and the minors would do all kinds of things together, just as they had done when the minors were at home. She also disciplined the minors during visits and they did not resist her. The minors' maternal great-grandmother came along on visits but did not discipline the minors. Because of the way the minors reacted when visits ended, mother believed it would be emotionally detrimental to them to terminate her parental rights. She said she was their sole provider and they were very involved with each other.

The maternal great-grandmother testified that when the minors said they wanted to go home with mother, mother would tell them she was "trying" and "doing all she can." Sometimes during visits a social worker would tell them to settle down, and they would heed the social worker.

County counsel asserted: Mother's account of the visits did not jibe with the information in the agency's reports. Furthermore, the fact that during visits the minors paid as much attention to the social worker's discipline as to the mother's discipline indicated they had no more of a relationship with mother than with the social worker. Mother had missed almost half her visits over the two-year duration of these proceedings; thus, she did not meet even the first prong of the beneficial relationship exception test. R.S. was less than a year old when removed from mother's custody. The minors were clearly adoptable and no exception to adoption applied. It would be emotionally detrimental to the minors to leave them without permanency in the hope that reunification with mother could still happen.

Mother's counsel argued that the beneficial parental relationship exception to adoption applied. The minors' counsel submitted on the reports and asked the juvenile court to follow the agency's recommendation.

The juvenile court ruled that whether or not mother met the first prong of the beneficial parental relationship test, she had not shown a relationship with the minors

4

sufficiently beneficial to outweigh the benefits of adoption. The juvenile court terminated mother's parental rights.

DISCUSSION

Mother contends the juvenile court abused its discretion in terminating her parental rights. We disagree.

We begin our discussion by noting that mother's brief does not contain a true statement of facts; it contains a "Statement of Pertinent Facts" but discusses only procedural matters. It does not provide an overview of the evidence in violation of rule 8.204(2)(C) of the California Rules of Court. The only facts cited are excerpts from mother's testimony at the section 366.26 hearing. But on appeal, we presume the challenged ruling is correct; the burden is on the appellant to rebut the presumption. To meet that burden, the appellant must address the evidence that appears to support the ruling and show why it does not actually do so. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) An appellant may not simply set out her own evidence and challenge the respondent to prove the lower court was right. (*Ibid.*; *Estate of Palmer* (1956) 145 Cal.App.2d 428, 431.)

Despite the inadequacy of mother's briefing, "[a] parent's interest in the companionship, care, custody and management of his [or her] children is a compelling one, ranked among the most basic of civil rights. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306.) Accordingly, we will address the merits of mother's contention.

" 'At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must make one of four possible alternative permanent plans for a minor child . . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' [Citations.] If the court finds the child is adoptable, it must terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.)

There are only limited circumstances permitting the juvenile court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child . . . ." (§ 366.26, subd. (c)(1)(B).) One of those circumstances is where the parent had maintained regular visitation and contact with the child *and* the child would benefit from continuing the relationship, often referred to as the beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i).) The benefit to the child must promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*); accord, *In re C.F.* (2011) 193 Cal.App.4th 549, 555 (*C.F.*).)

"Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 (*Jasmine D.*).)

The party claiming the beneficial parental relationship exception to adoption has the burden of establishing the circumstances supporting the exception. (*C.F., supra*, 193 Cal.App.4th at p. 553.) The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*In re K.P.* (2012) 203 Cal.App.4th 614, 622; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

6

"On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*Autumn H., supra*, 27 Cal.App.4th at p. 576.) " '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . .  Broad deference must be shown to the trial judge.' " (*Jasmine D., supra*, 78 Cal.App.4th at p. 1351.)

Mother saw the minors for one hour per month from July 2014 to the time of the section 366.26 hearing, while missing many visits before that time period.  But as the juvenile court found, even if mother's visitation was sufficiently regular and consistent to satisfy the first prong of the beneficial parental relationship exception, she failed to meet her burden as to the second prong:  she failed to show that severing her relationship with the minors would so greatly harm them as to outweigh the benefits of adoption.

As we have explained, the Legislature has expressed a strong preference for adoption.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228-229, 231; *Jasmine D., supra*, 78 Cal.App.4th at p. 1350.)  Here, the minors were adoptable and were living together in a prospective adoptive household that met their needs.  They had lived outside of mother's custody for almost two years, and the youngest of them was less than a year old when removed from mother's care.  The agency's reports indicated that although the minors enjoyed mother's visits, they departed from her without difficulty and viewed her more as a friendly visitor than a parent; indeed, one of them was upset about having to miss school to attend a visit.  Although mother and the maternal great-grandmother presented a different perspective, the juvenile court implicitly found the agency's evidence more credible and we must defer to the juvenile court's factual determinations.  (*Jasmine D., supra*, 78 Cal.App.4th at p. 1351; *Autumn H., supra*, 27 Cal.App.4th at p. 576.)  The juvenile court did not abuse its discretion in concluding that mother's

7

relationship with the minors was not sufficiently beneficial to outweigh the benefits of adoption.

DISPOSITION

The order terminating mother's parental rights is affirmed.


                                        /S/
                                        Mauro, J.



We concur:



    /S/
Raye, P. J.



    /S/
Blease, J.